ORIGINAL

(SPACE BELOW FOR FILING STAMP ONLY)

1  Ara Sahelian (State Bar No. 169257)
   sahelian@cox.net
2  LAW OFFICES OF ARA SAHELIAN
   23046 Avenida De. La Carlota, Suite 600
3  Laguna Hills, California 92653
   Telephone: (949) 588-5782
4  Facsimile: (949) 305-4192

5  James A. Rossi (State Bar No. 216357)
   rossij@cwllaw.com
6  T. Vincent Consolo (State Bar No. 245230)
   consolov@cwllaw.com
7  CRANDALL, WADE & LOWE
   A Profession Corporation
8  26010 Mureau Road, Suite 160
   Calabasas, California 91302
9  Telephone: (818) 871-9900
   Facsimile: (818) 871-9901
10

11 Attorneys for Plaintiff, RAY SAHELIAN

12

LODGED
CLERK, U.S. DISTRICT COURT

NOV - 6 2008
12:31 pm

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

NOV 1 3 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

13

## IN THE UNITED STATES DISTRICT COURT

14

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

## WESTERN DIVISION

16

17

18  RAY SAHELIAN, an individual,

19                              Plaintiff,

20      vs.

21  OREXIS, LLC, a foreign limited
    liability company; URBAN
22  NUTRITION, LLC, a foreign limited
    liability company; EXCELL NOW,
23  LLC, a foreign limited liability
    company; LONGEVITY, LLC, a
24  limited liability company; ATLANTIC
    COAST MEDIA GROUP, LLC, a
25  limited liability company; ANDREW
    SIRWILO, an individual; and
26  THOMAS SHIPLEY, an individual,

27                              Defendants.

28

Civil Action No. CV08-03561 RGK
(CTx)

AMENDED COMPLAINT FOR
TRADEMARK INFRINGEMENT,
UNFAIR COMPETITION,
DEFAMATION, FALSE
ADVERTISING, DAMAGES AND
REQUEST FOR INJUNCTIVE RELIEF

1

1    Plaintiff Ray Sahelian, M.D., ("Plaintiff") hereby alleges the following for his

2    complaint against Orexis, Urban Nutrition, Excell Now, Longevity, Atlantic Coast Media

3    Group, Andrew Sirwilo, and Thomas Shipley ("Defendants").

4                            **Jurisdiction and Venue**

5        1.      This action arises under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and

6    California Law.  The Court has subject matter jurisdiction over trademark claims and

7    related state claims pursuant to 28 U.S.C. § 1331, 1338, and 1367.

8        2.      Jurisdiction is based on Federal Question; 28 U.S.C. §1331.

9        3.      This Court has personal jurisdiction over Defendants in that Defendants are

10   doing continuous and systematic business in the State of California and in this judicial

11   District.  Defendants derive substantial revenue from interstate commerce committing

12   infringing acts and causing injury to Plaintiff in the State of California.  Defendants should

13   reasonably expect their infringing conduct to have consequences in the State of California.

14   At all relevant times Defendants have transacted business within the State of California and

15   contracted to supply goods or services in the State of California in connection with the

16   matters giving rise to this suit.                              .

17       4.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 (b)

18   and (c) as Defendants' infringing conduct have injured Plaintiff within this judicial district,

19   and because confusion is likely to occur in this district as a result of Defendants' unlawful

20   acts.  The Western Division, is the appropriate and convenient venue for this suit.

21                             **Nature of the Case**

22       5.      This is a civil action for damages and equitable relief, including permanent

23   injunctive relief, against Defendants for acts of trademark infringement, unfair competition,

24   false advertising, and defamation in violation of federal and state laws.  Defendants have

25   engaged in conduct amounting to a civil conspiracy designed to increase their financial

26   profits and harm plaintiff.  Civil Conspiracy is defined as a group of two or more persons

27   agreeing to a common plan or design to commit a tortious act.  *Idema v. Dreamworks, Inc.*,

28   162 F.Supp.2d 1129 (C.D.Cal. 09/10/2001).  Defendants have misappropriated Plaintiff's

2

1   name and reputation for purposes of their commercial gain. Additionally, Defendants'

2   directly and secondarily infringe on the trademark owned by Plaintiff, which is the subject

3   of a valid Certificate of Trademark Registration from the United States Patent and

4   Trademark Office. The infringement of Plaintiff's trademark is based on Defendants' use

5   of Plaintiff's trademark and name as keywords and metatags in online advertising.

6   Defendants bolster their position by using untrue and misleading advertising regarding

7   their own products. Defendants further harm Plaintiff's business reputation by publishing

8   false statements regarding Plaintiff's education and products on their websites.

9                                       **Parties**

10  **A.      Plaintiff Ray Sahelian, M.D.**

11          6.      Plaintiff Ray Sahelian, M.D., (hereinafter also "Plaintiff") has his principal

12  places of business in Los Angeles, California. Plaintiff is a licensed physician, certified by

13  the American Board of Family Medicine. Plaintiff publishes an online newsletter titled

14  "Supplement Research Update." He also provides consulting services to nutritional

15  companies and maintains the popular website www.raysahelian.com.

16          7.      Plaintiff has a valid, protected trademark interest in Passion Rx®.

17  Plaintiff's registration of the mark on the Principal Register in the United States Patent and

18  Trademark Office constitutes prima facie evidence of the validity of the registered mark

19  and of Plaintiff's exclusive right to use the mark on goods and services specified in the

20  registration. Plaintiff has priority of use. Plaintiff acquired ownership of said trademark,

21  invented the mark first, registered it first, and Plaintiff was the first to permit the use of the

22  mark in the sale of goods or services.

23          8.      Plaintiff has authored a number of books on nutritional supplements. They

24  have been translated into Japanese, Korean, Italian, German, Russian, and Chinese. A

25  listing of these books follows:

| Title | Publisher |
|---|---|
| Natural Sex Boosters | Square One publishers, 2004 |
| Mind Boosters | St. Martin's Press, 2000 |

3

| | |
|---|---|
| The Stevia Cookbook | Avery, 1999 |
| The Common Cold Cure | Avery, 1999 |
| 5:HTP Nature's Serotonin Solution | Avery, 1998 |
| Saw Palmetto: Nature's Prostate Healer | Kensington books, 1998 |
| Kava: The Miracle Anti-Anxiety Herb | St.Martin's Press, 1998 |
| Creatine Nature's Muscle Builder | Avery, 1997 |
| Pregnenolone | Avery, 1997 |
| Glucosamine | Longevity Research, 1997 |
| DHEA, A Practical Guide | Avery, 1996 |
| Melatonin: Nature's Sleeping Pill | Avery, 1995 |

9.      Plaintiff also formulates health supplements.  Among them is the formulation trademarked: Passion Rx®.

**B.      Defendants Orexis, Urban Nutrition, Excell Now, Longevity, Atlantic Coast Media Group, Andrew Sirwilo, and Thomas Shipley**

10.      Defendants Orexis, Urban Nutrition, and Excell Now, are foreign limited liability companies.  Defendants Longevity and Atlantic Coast Media Group are limited liability companies.  Defendants Andrew Sirwilo and Thomas Shipley are general partners in each of the above-referenced companies.  It is Plaintiff's contention, upon information and belief, that Orexis, Urban Nutrition, Excell Now, Longevity, and Atlantic Coast Media Group operate a number of cross-linked websites and services, the most prominent of which are www.menschoice.com, www.mentested.com, and www.orexis.com.  It is Plaintiff's contention, upon information and belief, that Orexis, Urban Nutrition, Excell Now, Longevity, and Atlantic Coast Media Group have their principal place(s) of business in the State of New York, New Jersey, and Virginia.

11.      It is Plaintiff's contention, upon information and belief, that Defendants operate a network of interlinked, so called "informational," webpages that seemingly provide unbiased commentary and analysis of health related products in order to direct

4

1  traffic to their websites. The underlying purpose of these "informational pages" is not to

2  disseminate information, but instead to direct traffic towards their own sites. Moreover,

3  some of Defendants' "informational pages" disparage competitors' product(s) or the

4  reputations of persons associated with said product(s).

5  **The Unauthorized Use of Plaintiff's Trademark and Name in Metatags and Keyword**

6  **Advertising for Commercial Gain.**

7  12.   Plaintiff seeks damages and injunctive relief for Defendants' use of

8  Plaintiff's personal name, in metatags and keyword advertising, for the purpose of

9  diverting internet users to the Defendants' webpages. Metatags are HTML code intended

10  to describe the contents of the website. Description metatags are intended to describe the

11  website. Keyword metatags contain keywords relating to the contents of the website.

12  Search engines such as Google or Yahoo look for keywords in places such as domain

13  names, actual text on the webpage, and metatags. The more often a term appears in the

14  metatags and in the text of the webpage, the more likely it is that the webpage will be "hit"

15  in a search for that keyword and the higher on the search results list of "hits" the webpage

16  will appear.

17  13.   In addition to seeking damages for Defendants' unauthorized use of

18  Plaintiff's personal name, Plaintiff also seeks damages and injunctive relief for

19  Defendants' use of Plaintiff's trademark, Passion Rx®, in metatags and keyword

20  advertising, for the purpose of diverting internet users to the Defendants' webpages and

21  thus to Defendants' products.

22  14.   Defendants are able to divert online users to their webpages by using such

23  metatags and keyword advertising. For instance, a web surfer using Yahoo as his search

24  engine to search for Plaintiff's name, "Ray Sahelian," receives a webpage containing links

25  to Defendant's webpages. Step I: Plaintiff's name "Ray Sahelian" is keyed into a Yahoo

26  search field. [EXHIBIT A is a true and correct copy of a Yahoo search results page for

27  "Ray Sahelian," as of 05/22/2008]. When this keyword is entered, the search engine

28  processes it through a self-created index of websites to generate a list relating to the entered

5

1  keyword. Each search engine uses its own algorithm to arrange indexed materials in

2  sequence, so the list of websites that any particular set of keywords will bring up may differ

3  depending on the search engine used. The search yields not only links related to the

4  Plaintiff, but also other links such as Defendants' advertised "informational page,"

5  www.themenschoice.com. Step II: The user can then click on the link to Defendants'

6  "informational page," www.themenschoice.com. [EXHIBIT B is a true and correct copy of

7  the www.themenschoice.com webpage, as of 01/14/2008]. Step III: Upon reading the

8  purported unbiased analysis of health related issues and/or products on said "informational

9  page," www.themenschoice.com, the user is then invited to click on the "Reader's Poll

10  Choice," which promotes the Defendants' Orexis product. [EXHIBIT C is a true and

11  correct copy of themenschoice.com's purported unbiased analysis of Defendants' Orexis

12  product, as of 01/14/2008]. Step IV: This page invites the user to visit the product's

13  "Official Orexis Website." [EXHIBIT D is a true and correct copy of the "Official Orexis

14  Website," as of 05/22/2008]. Step V: Finally, this page invites the user to place an order.

15  [EXHIBIT E is a true and correct copy of the Orexis order webpage, as of 05/22/2008].

16      15.    Similarly, a web surfer using Google as his search engine to search for

17  Plaintiff's Passion Rx® trademark receives a webpage containing links to Defendants'

18  webpages. Step I: Plaintiff's mark "Passion Rx" is keyed into a Google search field.

19  [EXHIBIT F is a true and correct copy of a Google search results page for "Passion Rx," as

20  of 05/22/2008]. The top result is a link to www.themenschoice.com. Additionally, when

21  the term "Passion Rx®" is keyed into a Google search field, links to Defendants' other

22  webpages are produced. [EXHIBIT G is a true and correct copy of a Google search results

23  page for "Passion Rx®"]. This search yields, not only links related to the Plaintiff, but also

24  other links such as Defendants' advertised "informational page," www.mentested.com.

25  The www.mentested.com website purports to offer unbiased analysis of health related

26  products such as Plaintiff's Passion Rx product and Defendants' Orexis Product.

27  [EXHIBIT H is a true and correct copy of the www.mentested.com webpage, as of

28  05/19/2008]. Step II: The user is invited to read purported unbiased analysis of Plaintiff's

6

1    Passion Rx product. [EXHIBIT I is a true and correct copy of the Passion Rx webpage on

2    www.mentested.com, as of 01/14/2008]. Step III:  Upon reading the purported unbiased

3    analysis of health related issues pertaining to Plaintiff's Passion Rx on said "informational

4    page," www.mentested.com, the user is then invited to click on the "Customer Testimonial

5    Award," which promotes the Defendants' Orexis product.  [EXHIBIT J is a true and

6    correct copy of mentested.com's purported unbiased analysis of Defendants' Orexis

7    product, as of 01/14/2008]. Step IV:  This page invites the user to visit the product's

8    "Official Orexis Website."  [EXHIBIT K is a true and correct copy of the "Official Orexis

9    Website," as of 05/22/2008].  Step V: Finally, this page invites the user to place an order.

10   [EXHIBIT L is a true and correct copy of the Orexis order webpage, as of 05/22/2008].

11        16.    To accomplish this trickery, Defendants have, and continue, to purchase

12   advertising on Google, Yahoo, and other search engines.  Plaintiff's name, "Ray Sahelian,

13   M.D.," and the "Passion Rx" trademark are used as metatags and keywords in the

14   purchased advertising.  By doing so, Defendants actively create an initial interest confusion

15   amongst the consuming public.

16        17.    Initial interest confusion impermissibly capitalizes on the goodwill

17   associated with a mark by creating initial interest in a competitor's product.  The internet

18   searches, such as those illustrated, yield advertisements which appear immediately after the

19   user types in Plaintiff's name "Ray Sahelian M.D., or his mark, "PassionRx"®.  The user

20   then becomes confused regarding the sponsorship of the advertisements.  Because of the

21   user's confusion, the user may click to a link believing that it will connect to Plaintiff's

22   website, www.raysahelian.com. Even if he immediately realizes, upon accessing the

23   competitor's website, that he has reached a website wholly unrelated to Plaintiff's, the

24   damage has been done: Defendants have gained a customer by appropriating the goodwill

25   that Plaintiff has developed in his name and his mark.

26   **The Publication of Offending Statements on Defendants' Websites Pertaining to**

27   **Plaintiff's Education, Business, Products, and Profession**

28        18.    Defendants publically question the legitimacy of Plaintiff's educational

7

1   degrees and professional licenses, and conclude that he is not qualified to provide medical

2   advice and guidance.  These false and unprivileged statements expose Plaintiff to ridicule

3   and disgrace, and have a tendency to injure Plaintiff's occupation in violation of California

4   Civil Code Section 45.

5       19.    Defendants' webpages contain the following harmful language:

6           "... it does not appear that Sahelian has received much external
   recognition that supports his books or supplements.  However, we
7           will still take a closer look at his educational background to
   determine how qualified Sahelian may be in "helping" others with
8           health related issues.

9   **Qualifications**

10          Sahelian has a bachelor's of science degree in nutrition from Drexel
   University and received doctoral training from Thomas Jefferson
11          Medical School.  Both of these schools are located in Philadelphia.
   Sahelian is also certified by the American Board of Family
12          Medicine.  This all sounds fine on the surface, but when you dig
   little deeper, it is understandable to not be all too impressed with
13          Sahelian's educational "training."  For example in plain terms, to us,
   a bachelor's of science degree in nutrition is the equivalent of an old
14          fashioned "lunchroom lady" and would hardly qualify to instruct
   others on their specific dietary needs.  Be advised, doctoral training
15          is not an equivalent to an actual medical degree.  We also want to
   note, Thomas Jefferson Medical School has been cited as a scam by
16          ripoffreports.com."

17

18      20.    Defendants also publish false statements that intentionally disparage the

19  quality of Plaintiff's products and liturature, and induce others not to deal with the

20  Plaintiff, which causes the Plaintiff actual pecuniary damage.

21      21.    Defendants' webpages contain the following harmful language pertaining to

22  Plaintiff's formulation - "Passion Rx":

23          "Passion RX is, as the name might suggest, is a male sexuality
   formula, which was developed by Ray Sahelian, a self-made
24          "expert" on holistic supplements.  He is the author is Natural Sex
   Boosters, which is a rather redundant and ineffectual book, which
25          does not really bring anything new to this market.  Regardless, he
   has developed many herbal-based formulas in the past, all dealing
26          with different issues such as joint formulas, eyesight enhances and
   prostate formulas, as well as other products.

27          Because of his reputation, he has developed quite a following;
   however, this kind of fad popularity does not necessarily translate
28          into actual results.  Passion RX is a male sexual enhancement

8

COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DEFAMATION, FALSE
ADVERTISING, DAMAGES AND REQUEST FOR INJUNCTIVE RELIEF

product, which Sahelian claims, "gives me special feelings, sensation, and stamina." However, the real question we have to answer is - will this product give others the same feelings? Are these claims fact or fiction? In order to answer this question we will dismantle this formula to see what it can actually bring to the table in terms of real results that other men can really feel."

22.     Each of these pages posted by Defendants culminates with an advertisement for a product, sold by Urban Nutrition.

### Defendants Use of Untrue and Misleading Advertising to Sell Their Products

23.     California Business & Professions Code §17500 prohibits untrue or misleading advertising that is known, or which reasonably should be known, to be untrue or misleading.

24.     Defendants' websites contain weekly misleading "Reader's Poll Choice" surveys, and "Customer Testimonial Award" surveys, which permanently promote their Orexis Product over all others. One of the misleading surveys reads as follows:

**"Our Reader's Poll Choice:**
Week of: ...

**Orexis®** - This exciting product has more testimonials than we have ever seen from real and enthusiastic customers. Their customers say enough to sell the product alone. Orexis® is the only non-prescription male sexual enhancement product we have reviewed; that effectively provides both immediate and long term guaranteed results. Orexis® works in just 45 minutes after consumption. The long-term benefits provide a permanent increase in erection size, orgasm control and stamina. What separates Orexis® from other products, is that it uses a patented delivery technology so that the ingredients bypass the stomach acids for immediate results. The proprietary manufacturing process extracts the natural ingredients 15 times their normal strength. Now natural ingredients can be as strong as prescriptions with no negative side effects.
Click HERE to Learn More."

### The Individual Principles of Defendant Companies Have Personal Liability For The Torts Committed Under the Lanham Act

25.     Defendants Andrew Sirwilo and Thomas Shipley should be held personally liable for the actions of their companies as they are general partners in the Defendant companies and it is plaintiff's contention, upon information and belief, that they authorized

9

1  or directed the creation of the civil conspiracy described above. Company principles,

2  directors, and officers are "personally liable for all torts which he authorizes or directs or in

3  which he participates, notwithstanding that he acted as an agent of the corporation and not

4  on his own behalf." *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1021

5  (9th Cir. 1985), cert. denied, 474 U.S. 1059 (1986). Officers and directors, cannot "hide

6  behind the corporation where they are actual participants in the tort." *Donsco, Inc. v.*

7  *Casper Corp.*, 587 F.2d 602 (3d Cir. 1978).

8

9  ## CLAIMS FOR RELIEF

10  26.    All of the above facts create a civil conspiracy consituting well recognized

11  separate causes of action under Federal and California law as set forth hereinafter:

12  ## COUNT I

13  ### Federal Trademark Infringement, 15 U.S.C. §1114

14  27.    All of those allegations set forth hereinabove in paragraphs 1 through 26 are

15  incorporated herein by reference as if fully set forth.

16  28.    The foregoing acts of Defendants constitute unlawful infringement of

17  Plaintiff's registered Passion Rx® mark in violation of the Lanham Act, 15 U.S.C. § 1114.

18  29.    By reason of the foregoing acts of Defendants, Plaintiff has sustained, and

19  in the absence of an injunction, will continue to sustain, injury and damages in an amount

20  to be proven at trial.

21  30.    Defendants were placed on notice and given an opportunity to cease

22  infringement. They did not cease. As such, infringement is willful and deliberate, and

23  sufficient to justify an award of attorneys' fees.

24  ## COUNT II

25  ### False Designation of Origin and False Endorsement in Violation of Langham Act, 15

26  ### U.S.C. §1125(a)

27  31.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 30,

28  inclusive, at though set forth fully herein

32.     Defendants' use, and continuing use, in interstate commerce of the Passion Rx® mark in connection with Defendants' webpages and products constitutes a violation of 15 U.S.C. §1125(a) in that it creates a false designation of origin as to the goods advertised, distributed, offered for sale and sold by Defendants, which is likely to confuse, mislead, or deceive the consuming public and trade by creating the false impression that Defendant's webpages and products advertised, distributed, offered for sale and sold by defendants have been manufactured, approved, sponsored, endorsed or guaranteed by, or are in some way affiliated, connected or associated with, Plaintiff.

33.     Defendants' use, and continuing use, in interstate commerce of the Passion Rx® mark in connection with Defendants' webpages and products also constitutes a false or misleading description or representation in interstate commerce, in violation of 15 U.S.C. §1125(a).

34.     As a direct and proximate result of the conduct of Defendants, Plaintiff is entitled to damages pursuant to 15 U.S.C. §1117(a) of: (i) Defendants' profits related to Defendants' webpages and products; (ii) any damages sustained by Plaintiff as a result of Defendants' conduct, the precise amount of which shall be established by Plaintiff at trial; and (iii) the costs of the action herein.

35.     Plaintiff is informed and believes, and bases thereon alleges, that Defendants have committed the acts alleged above with the wilful intent to trade on Plaintiff's good will and reputation in the context of a product closely associated with Plaintiff's core business and career.  As such, this case is exceptional under 15 U.S.C. §1117(a), entitling Plaintiff to recovery of his attorney fees and treble damages.

36.     Defendants' acts will continue and will cause irreparable injury to Plaintiff unless enjoined by this Court.

## COUNT III

### Federal Trademark Dilution, 15 U.S.C. §1125(c)

37.     Plaintiff repeats and alleges each and every allegation of paragraphs 1 through 36 as if fully set forth herein.

11

1       38.    The foregoing acts of Defendants – including but not limited to Defendants'

2 involvement in selling inferior products claimed to impact sexual activity – are likely to

3 tarnish and injure Plaintiff's reputation, impair the effectiveness of the Passion Rx® mark,

4 and dilute the distinctive quality of those marks.  The foregoing acts of Defendants

5 constitute an unlawful and intentional dilution under the Federal Anti-Dilution Act, 15

6 U.S.C. §1125(c).

7       39.    Defendants' acts will continue and will cause irreparable injury to Plaintiff

8 unless enjoined by this Court.

9       40.    Plaintiff is informed and believes, and bases thereon alleges, that

10 Defendants have committed the acts alleged above with the wilful intent to trade on

11 Plaintiff's reputation and to cause dilution of Plaintiff's registered mark.

12       41.    As a direct and proximate result of the above-described acts by Defendants,

13 Plaintiff has suffered damages in an amount to be proven at trial.

14                       **COUNT IV**

15              **Common Law Trademark infringement**

16       42.    Plaintiff repeats and alleges each and every allegation of paragraphs 1

17 through 41 as if fully set forth herein.

18       43.    Plaintiff owns common law trademark rights in the Passion Rx® mark and

19 in his name in California.

20       44.    Plaintiff has invested substantial time and money in developing, advertising,

21 and promoting his Passion Rx® mark and his name in the worldwide nutritional

22 supplement industry.

23       45.    Defendants are infringing Plaintiff's Passion Rx® mark.  The use of his

24 name and the Passion Rx® mark in Defendants webpages' metatags is likely to cause

25 confusion, or to cause mistake, or to cause deception as to the nature, characteristics,

26 qualities, affiliation, connection, or association of Defendants' products and services with

27 Plaintiff's Passion Rx® products.

28       46.    Defendants' acts will continue and will cause irreparable injury to Plaintiff

1   unless enjoined by this Court.

2       47.    As a direct and proximate result of the above-described infringing acts by

3   Defendants, Plaintiff has suffered damages in an amount to be proven at trial.

4   <center>**COUNT V**</center>

5   <center>**Unfair Competition Under California Business and Professions Code §17200**</center>

6       48.    All of those allegations set forth hereinabove in paragraphs 1 through 47 are

7   incorporated herein by reference as if fully set forth.

8       49.    The actions of Defendants, as set forth hereinabove in the promoting,

9   advertising, distributing, and selling of its products, amount to unlawful, unfair and

10   fraudulent business acts and practices that violate the California Business and Professions

11   Code §17200 *et seq.*, which provides in relevant part: "unfair competition shall mean and

12   include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

13   untrue or misleading advertising."

14       50.    As the direct and proximate result of Defendants' unfair and deceptive

15   practices, Plaintiff has suffered injuries entitling him to recover damages as may be

16   determined by the jury.

17       51.    Defendants' acts will continue and will cause irreparable injury to Plaintiff

18   unless enjoined by this Court.

19   <center>**COUNT VI**</center>

20   <center>**Common Law Unfair Competition**</center>

21       52.    All of those allegations set forth hereinabove in paragraphs 1 through 51 are

22   incorporated herein by reference as if fully set forth.

23       53.    Defendants' acts as set forth herein, including Defendants' unauthorized use

24   of the Passion Rx® mark and Plaintiff's name, are likely to cause confusion, or to cause

25   mistake, or to cause deception as to the nature, characteristics, qualities, affiliation,

26   connection, or association of Defendants' products and services with Plaintiff's products.

27   Such conduct undermines the ability of Plaintiff's mark to identify its products.

28       54.    As described above, Defendants have misused and infringed Plaintiff's

<center>13</center>

1  Passion Rx® mark and Plaintiff's name, and engaged in an unfair, unlawful deceptive, and

2  an illegal course of conduct with the intent to profit from the unauthorized use of Plaintiff's

3  mark and Plaintiff's name.

4     55.    Defendants' acts and threats will continue and will cause irreparable injury

5  to Plaintiff unless enjoined by this Court

6     56.    As the direct and proximate result of the above-described acts by

7  Defendants, Plaintiff has suffered injuries entitling him to recover damages as may be

8  determined by the jury.

9     57.    Defendants acted with oppression, fraud, and malice in its infringing, and

10  Plaintiff is entitled to punitive damages..

11                          **COUNT VI**

12        **Misappropriation of Name and Likeness for a Commercial Purpose,**

13                    **California Civil Code §3344**

14     58.    All of those allegations set forth hereinabove in paragraphs 1 through 57 are

15  incorporated herein by reference as if fully set forth.

16     59.    Defendants knowingly used, and continue to use, Plaintiff's name and the

17  Passion Rx® mark for purposes of soliciting purchases, advertising and selling their

18  products, merchandise, and goods without the prior consent of Plaintiff or his agents.

19     60.    As a direct and proximate result of Defendants' knowing and unauthorized

20  use of Plaintiff's name, Plaintiff has been damaged in an amount to be proved at trial.

21     61.    As a further direct and proximate result of Defendants' knowing, willful,

22  and conscious disregard for the rights of Plaintiff, Defendants are guilty of oppression,

23  fraud, and malice, entitling Plaintiff to an award of punitive damages.

24     62.    Plaintiff is informed and believes, and bases thereon alleges, that

25  Defendants have continued to manufacture, offer for sale and sell, advertise, market, and

26  distribute Defendants' products on Defendants' webpages.  Unless and until enjoined and

27  restrained by order of this Court, Plaintiff will continue to suffer great and irreparable

28  injury in that his name and the Passion Rx® mark are being falsely associated with

Defendants' webpages and Defendant's products.  Plaintiff has no adequate remedy at law for such injury.

## COUNT VIII

### <u>Common Law Misappropriation of Name or likeness</u>

63.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 62, inclusive, as though set forth fully herein.

64.    Defendants have violated Plaintiff's exclusive right by knowingly and intentionally using Plaintiff's name and the Passion Rx® mark, without his prior consent, for commercial purpose, gain and profit in connection with manufacturing, offering for sale, and selling, advertising, marketing, and distributing Defendants' products on Defendants' webpages.

65.    The use of Plaintiff's name and the Passion Rx® mark by Defendants in connection with the manufacturing, offering for sale, and selling, advertising, marketing, and distributing Defendants' products on Defendants' webpages has directly resulted in substantial and ongoing harm and injury to Plaintiff, in that, among other things, his name and the Passion Rx® mark are being falsely associated with Defendants' products and Defendants' webpages.

66.    As a direct and proximate result of the conduct of Defendants, Plaintiff is entitled to the recovery of general and compensatory damages related to Defendants' manufacturing, offering for sale, and selling, advertising, marketing, and distributing Defendants' products on Defendants' webpages, the precise amount of which shall be established by Plaintiff at trial, according to proof.

67.    As a further direct and proximate result of Defendants' knowing, willful, and conscious disregard for the rights of Plaintiff, Defendants are guilty of oppression, fraud, and malice, entitling Plaintiff to an award of punitive damages.

68.    Plaintiff is informed and believes, and bases thereon alleges, that Defendants have continued to manufacture, offer for sale and sell, advertise, market, and distribute Defendants' products on Defendants' webpages.  Unless and until enjoined and

15

1  restrained by order of this Court, Plaintiff will continue to suffer great and irreparable

2  injury in that his name and the Passion Rx® mark are being falsely associated with

3  Defendants' webpages and Defendant's products.  Plaintiff has no adequate remedy at law

4  for such injury.

**COUNT IX**

**California Anti-Dilution Act, California Business and Professions Code §14330**

7       69.     Plaintiff repeats and realleges each and every allegation of paragraphs 1

8  through 68 as if fully set forth herein.

9       70.     The foregoing acts of Defendants are likely to injure Plaintiff's business

10  reputation, impair the effectiveness of Plaintiff's Passion Rx® mark, and dilute the

11  distinctive quality of the Passion Rx®.  The foregoing acts of Defendants constitute an

12  unlawful and intentional dilution in violation of the California Anti-Dilution Act, Cal. Bus.

13  & Prof. Code §14330.

14       71.     Defendants' acts will continue and will cause irreparable injury to Plaintiff

15  unless enjoined by this Court.

**COUNT X**

**Exceptional Case, 15 U.S.C. §1117(a)**

18       72.     Plaintiff repeats and realleges each and every allegation of paragraphs 1

19  through 71 as if fully set forth herein.

20       73.     Defendants have committed acts and will continue to commit acts that make

21  this case exceptional under 15 U.S.C. §1117(a).  In particular, Defendants' willfully

22  infringing acts make this an exceptional case, meriting the full amount of damages

23  available under the law.

**COUNT XI**

**Libel, Cal. Civ. Code §45**

26       74.     Plaintiff repeats and realleges each and every allegation of paragraphs 1

27  through 73 as if fully set forth herein.

28       75.     Defendants' websites publish false and unprivileged written statements of

1    fact pertaining to Plaintiff's education, business, products, and profession on the world

2    wide web.

3         76.    These statements expose the Plaintiff to hatred, contempt, ridicule, and

4    disgrace, and cause Plaintiff to be shunned or avoided in his community and professional

5    associations, and tend to injure Plaintiff in his occupation.  The statements are defamatory

6    on their face, i.e., they are libel per se.

7         77.    Defendants' statements appear to be made with the intent to harm Plaintiff's

8    business and occupation, and to increase their own business profits.  As such, said

9    statements were made with actual malice.

10        78.    The statements published on Defendants' websites are libelous per se, and

11   the court may presume that general damages exist, and the Plaintiff need not show any

12   special damage.

### COUNT XII

### Trade Libel

15        79.    Plaintiff repeats and realleges each and every allegation of paragraphs 1

16   through 78 as if fully set forth herein.

17        80.    Defendants' websites publish false and unprivileged written statements of

18   fact pertaining to Plaintiff's education, business, products, and profession on the world

19   wide web.

20        81.    The statements disparage the quality of Plaintiff's property, products,

21   business goods, and literature, and express that Plaintiff manufactures inferior goods.

22        82.    The statements play a material and substantial part in inducing others not to

23   deal with the Plaintiff.

24        83.    Defendants' statements appear to be made with the intent to harm Plaintiff's

25   business and occupation, and to increase their own business profits.  As such, said

26   statements were made with actual malice.

27        84.    Plaintiff can will be able to show that prospective customers were deterred

28   from buying goods from Plaintiff, and that Plaintiff experienced a loss of prospective

1  contacts with customers.

## COUNT XIII

### False Advertising Under Business & Professions Code §17500

85.  All of those allegations set forth hereinabove in paragraphs 1 through 84 are incorporated herein by reference as if fully set forth.

86.  The actions of Defendants, as set forth hereinabove in the promoting, advertising, distributing, and selling of its products on cross-linked websites, amount to false advertising under California Business and Professions Code §17500 *et seq.*

87.  The use of disparaging statements about Plaintiff's products and qualifications, as well as weekly company-created "Reader's Poll Choice" surveys, and "Customer Testimonial Award" surveys found on Defendants' cross-linked websites, which permanently promote their Orexis Product over all others, are false and misleading, and members of the public are likely to be deceived.

88.  Defendants knew or should have known that they were disseminating misleading advertising, as it is plaintiff's contention, upon information and believe, that the company principles/managers authorized or directed the creation of the civil conspiracy described above in an effort to increase their profits.

89.  Plaintiff has standing to sue under this statue and may file a complaint on behalf of himself, and the general public.

## DAMAGES AND REMEDIES

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

**On All Counts.**

1.  That Defendants be ordered to account and pay to Plaintiff all profits related to Defendants' webpages, and Defendants' products, as permitted by 15 U.S.C. §1117(a) and California Civil Code §3344, including pre- and post-judgment interest thereon at the maximum rate permitted by law;

18

2.    For Plaintiff's general and compensatory damages, the precise amount of which shall be established at trial, according to proof;

3.    For three times the amount of Plaintiff's actual damages, as permitted by 15 U.S.C. §1117(a);

4.    For an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a), as this is an exceptional case, in that Defendants' conduct is malicious, fraudulent, intentional and willful;

5.    For attorneys' fees as permitted by California Civil Code §3344;

6.    For punitive damages, the precise amount of which shall be established at trial, according to proof, as permitted by California Civil Code §3344;

7.    That, pursuant to 15 U.S.C. §1114, California Business and Professions Code sections 17200, *et seq.*, and 17500, *et seq.*, and the common law, Defendants, including their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, temporarily and permanently be enjoined and cease from (i) directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting and inducing or participating in the infringement of any of Plaintiff's respective trademark or exclusive rights protected by the Lanham Act, whether now in existence or hereafter created; (ii) using Plaintiff's name in metatags and keyword advertising, (iii) using Plaintiff's trademarks, or any other mark or domain name substantially similar thereto, in metatags and keyword advertising, and (iv) selling any goods or services;

8.    Upon final hearing, that said injunction be made permanent;

9.    That, pursuant to §§17203, 17206, 17207, and 17500 of the California Business and Professions Code, Defendants receive a civil penalty not to exceed two thousand five hundred dollars ($2,500.00) for each violation, for disgorgement of money that has been wrongfully obtained, and a total penalty of five thousand dollars $5,000.00 for each unlawful act;

10.    For general damages under Cal. Civ. Code §48a (4)(a), special damages

19

1   under Cal. Civ. Code §48a (4)(b), and punitive damages under Cal. Civ. Code §48a (4)(c),

2   (d), and 3294.

3         11.    For a declaration that Defendants' conduct willfully infringes Plaintiff's

4   trademark both directly and secondarily;

5         12.    For the costs of the action incurred herein; and

6         13.    For such other and further relief as the Court deems just and proper.

7

8   DATED: October 31, 2008          Respectfully submitted,

9                                 CRANDALL, WADE & LOWE
                              A Professional Corporation

10

11                       By _____

12                                 JAMES A. ROSSI
                              T. VINCENT CONSOLO

13                                 Attorneys for plaintiff, RAY SAHELIAN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DEFAMATION, FALSE
ADVERTISING, DAMAGES AND REQUEST FOR INJUNCTIVE RELIEF